UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

WANDA SANCHEZ DAY,

                Plaintiff,

            10 Civ. 4888 (RWS)

    - against -

                  <u>OPINION</u>

THE NEW YORK CITY DEPARTMENT OF CONSUMER
AFFAIRS, THE CITY OF NEW YORK, JONATHAN
MINTZ, FRED R. CANTOR, MARLA TEPPER, and
SANFORD COHEN,

             Defendants.

-----------------------------------------X

A P P E A R A N C E S:

      <u>Attorneys for the Plaintiff</u>

      THE LAW OFFICES OF ALI & BAINS P.C.
      118-35 Queens Boulevard, Suite 1709
      Forest Hills, NY 11375
      By:  Tejinder Singh Bains, Esq.

      <u>Attorneys for the Defendant</u>

      GORDON & REES, LLP
      1 Battery Plaza, 28th Floor
      New York, NY 10004
      By:  Adam Edward Collyer, Esq.

      NEW YORK CITY LAW DEPARTMENT
      100 Church Street
      New York, NY 10007
      By:  Benjamin Fox Tracy, Esq.
           Kuuku Angate Minnah-Donkoh, Esq.
           Shira M. Blank, Esq.
           Larry Rafael Martinez, Esq.

**Sweet, D.J.,**

The City of New York (the "City"), the New York City
Department of Consumer Affairs, Jonathan Mintz, Fred R. Cantor,
Marla Tepper, and Sanford Cohen (collectively, the "Defendants")
have moved for summary judgment pursuant to Federal Rule of
Civil Procedure 56, seeking to dismiss the Complaint brought by
plaintiff Wanda Sanchez Day ("Sanchez Day" or the "Plaintiff").
Based on the conclusions set forth below, the motion for summary
judgment is granted.

**Prior Proceedings**

This case was initiated by Sanchez Day on June 23, 2010,
with the filing of a Complaint alleging claims of gender
discrimination, in violation of Title VII of the Civil Rights
Act; racial discrimination, in violation of 42 U.S.C. § 1981;
gender, race or national origin harassment, in violation of 42
U.S.C. § 1981; Retaliation, in violation of 42 U.S.C. § 2000e-
3(a); and common-law negligence.  (See Complaint, Dkt. No. 53-
18.)  The Defendants filed their Answer on December 13, 2010.
(Dkt. No. 6.)

Discovery commenced and continued over a period of years,

2

culminating in the Defendants' filing of the instant motion on July 15, 2015. (Dkt. No. 44.) The Plaintiff filed her opposition papers on September 2, 2015 (Dkt. No. 53), the Defendants replied on September 16, 2015, and the motion was heard on October 21, 2015. (See Dkt. No. 65.)

**Facts**

The facts are set forth in the Parties' Local Rule 56.1 Statements (Dkt. Nos. 47, 55-1, & 61) and are not in dispute except as noted below.

Sanchez Day, a Latina woman, was employed as an agency attorney at the New York City Department of Consumer Affairs (the "DCA"). She alleges that while in that position she endured "abusive and discriminatory language" from her supervisor, Fred Cantor, then the Deputy Director of the DCA's Legal Compliance and Fitness Division. The language in question was the use of the term "ignorant slut" in reference to Sanchez Day. The meaning of the term is disputed: the Plaintiff contends that Cantor meant the term as an offensive slur, intended to demean her based on her gender, while the Defendants assert that the phrase was a reference to a famous sketch from the early days of *Saturday Night Live*, in which Dan Aykroyd and Jane Curtin played foul-mouthed pundits on "Weekend Update," a

3

send-up of a television newscast.

Sanchez Day recalled Cantor using the phrase during a
conversation about process servers that took place during her
first week at DCA.  Sanchez Day described the incident as
follows:

> "And then he just said, you know, you ignorant slut . .
> . . And when he said that, I turned around, and I looked
> at [a coworker] and she had this look on her face, like
> (Indicating) - and, like, she didn't know if she was
> going to crack up . . . and what I did was, I ran to
> [supervisor] Susan Kassapian's office, which is three
> offices down, and I said to her, listen, um, you know,
> this guy called me, you know, an ignorant slut in front
> of [the coworker].  And then she's like, looks at him
> and says, what did you do that for, like he's a kid, you
> know.  And this is a 50-, 60-year old man.  And what did
> you do that for?  And, you know, he's like, oh, you know,
> it was like: You know, you never heard of *Saturday Night
> Live*?  And I'm like, no, um, I don't watch *Saturday Night
> Live*.  It's not what I do.  And, you know, it's
> inappropriate."

(Plaintiff's Deposition Transcript (the "Dep. Tr."), Dkt. No. 45
Ex. A, 64:12-65:11.)  The parties agree that Cantor used the
phrase two to four times over an eighteen-month period.

Sanchez Day was hired by DCA in November 2007, after
working for three years at the Legal Aid Society.  During the
hiring process, she was interviewed by Cantor and Susan
Kassapian, another supervisor, both of whom recommended that she
be hired for the position.[1]  Part of her job involved determining

---

[1] Although Sanchez Day disputes that Cantor and Kassipian recommended hiring
her, she does not cite to any admissible evidence to buttress her assertion,
as required by Local Rule 56.1(d).  The fact is therefore deemed admitted for
the purpose of this motion.  See Local Rule 56.1(c).

4

whether licensed process servers were in compliance with legal requirements.

At some point during Sanchez Day's employment, Kassapian complained about her pace in dealing with investigative subpoenas regarding process servers and process server organizations, though the parties dispute the form of the criticism.  Defendants contend that Kassapian told Sanchez Day to "quicken up," while the Plaintiff asserts that she was "simply asked [] to pick up the pace," which was meant to highlight the importance of the problem, rather than any lack of performance on Sanchez Day's part.  By June 2008, seven months after beginning work on the matter, Sanchez Day had not drafted any notices commencing proceedings against process servers in the DCA's administrative tribunal.[2]

On June 26, 2008, Sanchez Day submitted a memorandum whose meaning is disputed.  According to the Defendants, Sanchez Day "committed" to drafting notices beginning proceedings against five process servers who appeared to be in violation of their legal obligations.  According to Sanchez Day, the memo did not require her to take any action, but was simply "written to

---

[2] Sanchez Day disputes this assertion, but her Rule 56.1 statement does not actually contest its accuracy.  Rather, she notes that "no written warnings were issued to plaintiff" and that "this is defendant's pretext" for taking discriminatory action against her.  Because Sanchez Day's response does not "specifically controvert[]" the fact asserted, it is deemed admitted.  See Local Civil Rule 56.1(c).

advise management about what should be done in order to meet the end goal. (Emphasis in Sanchez Day's Rule 56.1 statement.) The memo itself is subject to multiple interpretations, explaining that

> The following is a list of the initial Process Servers we should act against soon. At your request, I also provide an explanation of why they are targets for [Notices of Violation], what we intend to do in each case to move toward revocation and an estimated timeline in which we expect to accomplish this in each case.

(Memo, Dkt. No. 45 Ex. E, at 1.) Sanchez Day submitted only one draft notice of violation during July of 2008, which was not finalized until September.[3] On October 1, 2008, Sanchez Day committed to Kassapian that she would produce ten notices per week until notices were prepared against a total of 51 process servers were out of compliance in their recordkeeping.

In January 2009, Kassapian drafted Sanchez Day's performance evaluation for the prior year, with an overall rating of "conditional." In an email to her supervisors, Kassapian explained that Cantor had pushed her to "soften the criticism a bit," and that he thought that Sanchez Day's overall rating should be "'good,' rather than 'conditional.'" Kassapian

---

[3] Sanchez Day disputes this and several other asserted facts "to the extent that defendants imply that [they were] the basis for plaintiff's 'conditional' evaluation," because the Defendants allegedly failed to provide requested discovery, and because Sanchez Day was not given a written warning that the performance at issue could result in a "conditional" evaluation. Because these objections do not dispute the accuracy of the facts asserted and are not supported with admissible evidence, the facts are deemed admitted. See Local Civil Rule 56(c, d).

6

wrote "I disagree and think we need to strongly address her
shortcomings so that she will quickly work to improve them.
This is her first evaluation and if we're wrong at [sic] her
being able to significantly improve, we'll be boxing ourselves
in if we need to try and get rid of her." (Email, Dkt. No. 45
Ex. G.) Sanchez Day's final performance evaluation was rated
conditional, based on concerns including "attention to detail,"
"an ongoing need to improve time management skills," and poor
written work product. (Performance Evaluation, Dkt. No. 53-6.)

In April of 2009, after receiving the "conditional"
performance evaluation, Sanchez Day emailed Cantor and stated
that she intended to apply for Kassapian's position, Director of
Legal Compliance and Fitness, and asked for his support. The
position required eighteen months of experience supervising
other attorneys. Sanchez Day was not given the position, but
the parties dispute the reason. The Defendants cite to the
deposition of defendant Marla Tepper, a senior attorney at DCA,
and assert that Sanchez Day was not promoted because of her work
product. Tepper stated that Sanchez Day "had a rating of
conditional on her evaluation, and those reasons, our personal
observation, and her evaluation, her work on the process server
initiative, le[d] us to conclude she was not qualified to lead a
division." (Dkt. No. 45 Ex. K.) Sanchez Day disputes this
assertion, but cites only paragraph 38 of her Complaint, which

asserts that senior managers informed her "that she was did not [sic] qualify for a promotion based on her resume." Because Sanchez Day does not cite to any admissible evidence in disputing Tepper's account of DCA's reasoning, it is deemed admitted. See Local Rule 56.1(d).

In May 2009, Sanchez Day went to DCA's office of Equal Employment Opportunity and spoke with Everett Barrett, an EEO Officer there. The parties dispute what took place between Sanchez Day and Barrett; Defendants assert that Sanchez Day discussed the situation, but did not want to file a Complaint. Sanchez Day states that Everett promised to investigate her complaints, but never did. Sanchez Day also told defendant Sanford Cohen that she was unable to work with Cantor and had been subjected to abusive language from him. The parties similarly differ on how Cohen responded. Defendants state that he informed Sanchez Day of her rights, but she declined to make a formal complaint, and that Cohen then met with Cantor regarding the issues Sanchez Day raised; Sanchez Day stated at her deposition that Cohen was adversarial toward her and did not take any action regarding her concerns.

On October 14, 2009, Sanchez Day called Cohen and left a message. The parties dispute its contents. The Defendants include a recording and transcript, in which Sanchez Day states

Hi Sandy, this is Wanda. I am calling to let you know

8

that I am resigning my position at the Department of
Consumer Affaris for medical reasons and at this stage
. . . I believe there are four pending cases and they
are all on the legal calendar. There is nothing else
pending as far as I know with respect to the cases,
except that they remain open. I will probably like to
talk to you about a final date but I will not be in today
or tomorrow, for that matter. Today is Wednesday October
14, and again the cases have been adjourned to November
4. . . . I will be calling soon so we can determine when
my (unclear) at DCA, and so that I can come in and
finalize some of the cases and – and determine my last
day.

(Dkt. No. 45-17.) In discussing the message, Sanchez Day states

that "I intended to apply for a medical leave of absence. I

telephoned Sanford Cohen, who I understood was the next Unit

Supervisor at the time. I left a message on his voicemail. I

informed him that I was out for medical reasons. I did not

intend to resign but instead asked him to telephone me to

discuss a medical leave of absence. He did not call me back."

(Pl. Aff. in Opp., Dkt. No. 53-1, ¶ 103.)

In July 2009, Sanchez Day executed a charge of

discrimination with the Equal Employment Opportunity Commission,

alleging that she was discriminated against on the basis of her

race and gender. On March 23, 2010, the EEOC issued a Dismissal

and Notice of Rights, closing its file on Sanchez Day's charges,

stating that there was insufficient evidence to support her

allegations of discrimination and retaliation, and informing her

of her right to sue in this Court within 90 days. (Dkt. No. 45-

14.) Sanchez Day commenced the instant action three months

later.

**Applicable Standard**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249). Where there are ambiguities in the factual evidence presented, the Court draws all inferences in favor of the nonmoving party. Chiang v. Donahoe, 579 F. App'x 39, 40 (2d Cir. 2014).

**The Motion is Granted**

10

As an initial matter, the Plaintiff's claims against DCA

must be dismissed because it is merely an administrative

department of the City, and cannot be sued separately. See

Jones v. Westchester County Dep't of Corr. Med. Dep't, 557 F.

Supp. 2d 408, 416 n.4 (S.D.N.Y. 2008). Defendants also raise a

number of additional procedural issues, including whether the

statute of limitations bars any claims by Sanchez Day concerning

events that transpired before September 2008, and Sanchez Day's

alleged failure to exhaust administrative remedies regarding

claims that accrued after July 2009. Because these procedural

objections would not fully resolve any of Sanchez Day's claims,

this opinion turns to the merits without reaching them. Cf.

Ortiz v. Firebrand Corp., 527 U.S. 815, 830-32 (1999).

## The Facts do Not Support Plaintiff's Allegations of Gender-based Discrimination or Harassment

The Plaintiff's Complaint is vague and imprecise in

specifying the basis of her sex discrimination claims. In the

first count of her Complaint, she alleges "gender discrimination

and harassment," citing generally to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, et seq., but does not

specify particular acts of discrimination relevant to the claim

11

or articulate a specific statute or legal provision on which she
bases her claim for relief. (Complaint ¶¶ 55-63.) In the third
count of her Complaint, covering "gender, race or national
origin harassment," she alleges that she is female, Puerto
Rican, and Hispanic, and that the Defendants' "harassment and
ill-treatment of Plaintiff violates 42 U.S.C. § 1981," but
similarly does not indicate which specific acts of harassment or
ill-treatment provide the basis for the claim. (Complaint ¶¶
69-73.) Based on her briefing, the Court takes her gender
discrimination claims to be based on an allegedly hostile work
environment, and on DCA's failure to promote her to Kassapian's
position. (See Pl.'s Opp. Br., Dkt. No. 53, at 7 ("defendant
Fred Cantor discriminated against plaintiff by using sexually
explicit and abusive words and slurs"); id. at 9 ("Defendants .
. . continued to subjected [sic] plaintiff to a hostile work
environment . . . ."); Complaint ¶ 38 ("Notwithstanding
Plaintiff's past achievements and experience, senior managers
informed Plaintiff that she was did not qualify [sic] for a
promotion based on her resume.")).

Title VII prohibits discrimination against any individual
because of sex. See 42 U.S.C. § 2000e-2(a)(1). Its protections
are not limited to economic or tangible discrimination, such as
unjust termination, discriminatory pay practices, or failure to
hire or promote based on sex, but also prohibit employers from

maintaining a discriminatorily hostile or abusive work environment.  See Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010) (citing Harris v. Forklift Sys., Inc.  510 U.S. 17, 21 (1993)).  Title VII "does not set forth a general civility code for the American workplace," but instead is violated when the workplace "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Id. (citations and quotations omitted).

The determination of whether a workplace is impermissibly hostile or abusive "is not, and by its nature cannot be, a mathematically precise test."  Harris, 510 U.S. at 22.  Instead, a court must look at "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris, 510 U.S. at 23; Kaytor, 609 F.3d at 547.

Sanchez Day's allegations simply fall short of the standard necessary to constitute a hostile work environment.  The sole significant incidence of gender-based harassment that she alleges is Cantor's reference to the phrase "ignorant slut" from the *Saturday Night Live* sketch two to four times in an eighteen-

13

month period.  These phrases, standing alone, cannot sustain her

claim because "[i]solated incidents generally will not suffice

to establish a hostile work environment unless they are

extraordinarily severe." Kaytor, 609 F.3d at 547.  While the

term Cantor used is a deeply offensive one and the parties

dispute whether it was genuinely meant, the Plaintiff's

assertion that it was intended as a slur is undermined by her

concession at her deposition that Cantor explained shortly after

his use of the term that the words were used to refer to the

Saturday Night Live sketch, and not to Sanchez Day.  See Dep.

Tr. at 64:12-65:11.  Although Cantor's references to the sketch

were certainly boorish and inappropriate for the workplace, the

handful of insensitive statements about which Sanchez Day

complains do not establish that "the workplace was permeated

with discriminatory intimidation, ridicule, and insult, as

required under [] Title VII."[4]  See Lewis v. City of Norwalk, 562

F. App'2 25, 28-29 (2d Cir. 2014) (affirming denial of hostile

work environment claim where overt sexual conduct "occurred only

---

[4] In her Complaint, Sanchez Day does allege a handful of additional
inappropriate statements by Cantor, including a reference to her drinking at
an office luncheon and a statement that she was "hysterical." (Complaint ¶¶
39-40.)  Because these statements were not included in a Rule 56.1 statement
(where they would have been required to be supported by admissible evidence),
the Court need not consider them.  See McCall v. Genpak, LLC, No. 13 Civ.
1947, 2015 WL 5730352, at *13 (S.D.N.Y. Sept. 30, 2015).  Even if the alleged
statements were to have been conclusively established, however, the conduct
asserted would still amount to isolated workplace rudeness, rather than the
sort of pervasive and discriminatory atmosphere that would support a civil
rights claim.

sporadically over time, and no more than a few times a year.")
Her additional allegations of broad, but nonspecific, harassment
and discrimination are mere conclusory statements, and not
sufficient to defeat summary judgment.  See Woods v. Ruffino, 8
F. App'x 41, 42 (2d Cir. 2001).

Sanchez Day's claim for failure to promote is analyzed
under the burden-shifting framework established by the Supreme
Court's decision in McDonnell Douglas Corp. v. Green, 411 U.S.
792 (1973).  See Yu v. N.Y. City Housing Dev. Corp., 494 F.
App'x 122, 124-25 (2d Cir. 2012).  That analysis consists of
three parts.  First, a plaintiff must establish a prima facie
case of discrimination, requiring her to show that 1) she is a
member of a protected class, 2) she applied and was qualified
for a job for which the employer was seeking applicants, 3) she
was rejected for the position, and 4) the position remained open
and the employer continued to seek applicants having the
plaintiff's qualifications.  Id. (citing Estate of Hamilton v.
City of New York, 627 F.3d 50, 55 (2d Cir. 2010).  Once a
plaintiff establishes a prima facie case of discrimination, the
burden shifts to the employer "to articulate some legitimate,
nondiscriminatory reason for the employee's rejection."  Id.
(quoting McDonnell Douglas, 411 U.S. at 802).  Finally, the
plaintiff then bears the burden of demonstrating that the
reasons provided for the failure to promote were not the

15

employer's true reasons, but rather a pretext for
discrimination. Id. (citing Leibowitz v. Cornell Univ., 584
F.3d 487, 499 (2d Cir. 2009)).

In the case of Sanchez Day, it is undisputed that she is a
member of a protected class, that she applied for the position
of Director of Legal Compliance and Fitness, that her candidacy
was rejected, and that DCA continued to seek other applicants
after turning her down. Sanchez Day's ability to make a prima
facie case thus turns on whether she can demonstrate that she
was qualified for the position. Based on the record before the
Court, it is clear that she cannot. The parties do not dispute
that the position required eighteen months of experience
managing other attorneys, but Sanchez Day had been with DCA for
less than eighteen months at that point. She had previously
worked as an attorney at the Legal Aid Society, but there is no
indication in her complaint that the position involved
supervising other lawyers - the relevant paragraph describes her
responsibilities as including "mentoring junior attorneys and
hiring and supervising law student interns, as well as hiring
and directly supervising at least one staff member," with
nothing to indicate that the staff member in question was a
lawyer. (Complaint ¶ 37.) Sanchez Day had also recently
received a "conditional" evaluation for her job performance in
2008; with her work in a more junior position in question, it is

16

unclear at first glance why she would be qualified for an increase in responsibility.

Sanchez Day offers minimal evidence to support the assertion that she was qualified for the promotion she sought. In her Rule 56.1 counterstatement, she disputes the Defendants' assertion that she was unqualified, citing to three sources: Paragraph 38 of her Complaint, which states that DCA managers informed her that she was not qualified for the promotion based on her resume, "[n]otwithstanding Plaintiff's past achievements and experience;" two paragraphs of an affidavit from Sanchez Day in which she asserts she was qualified because of her time at Legal Aid, and three paragraphs from her deposition, at which she asserts that she was qualified because she had been working at DCA for two years and "knew the work." (See Pl.'s Rule 56.1 Statement, Dkt. No. 55-1, ¶¶ 50-51.) These conclusory assertions by the Plaintiff do not establish a prima facie case that she was qualified, nor could a jury reasonably rely on them to find that the Defendants' assertion that she lacked the requisite qualifications was pretextual in nature. See Digilov v. JPMorgan Chase Bank, N.A., No. 13 Civ. 975, 2015 WL 685178, at *13 (S.D.N.Y. Feb. 18, 2015) (noting that courts in the Second Circuit have repeatedly found an employee's lack of qualifications to be a legitimate justification, particularly when supported by facially honest performance evaluations);

17

Hussey v. N.Y. State Dep't of Law, 933 F. Supp. 2d 399, 407
(E.D.N.Y. 2013) ("Plaintiff is, however, required to allege some
facts - not mere conclusions, plausibly suggesting that the
decision to pass her over for the promotion . . . was made
because of plaintiff's [protected class]."). Summary judgment
is therefore granted in favor of the Defendants on Counts One
and Three of the Complaint.

The Facts Do Not Support Plaintiff's Allegations of Racial
Discrimination or Harassment

The second count alleged in Sanchez Day's Complaint alleges
that she suffered discrimination on the basis of her race or
national origin, in violation of 42 U.S.C. § 1981. (Complaint
¶¶ 64-68.) As with her gender-based claims, Sanchez Day does
not support the claim with reference to any specific actions
taken against her because of her race, nor identify any specific
racial harassment that she suffered. (See id.) Unlike those
claims, which were at least supported by allegations that
supervisory employees used gender-based language in the
workplace (see Complaint ¶¶ 29 ("ignorant slut"), 41
("hysterical")), there are no allegations in the Complaint
alleging any racially abusive language, or any reference to her
Puerto Rican background on the part of any DCA employee. (See
generally Complaint.) Moreover, the considerations that

18

undermine Sanchez Day's gender-based hostile work environment
and failure to promote arguments are equally fatal to a putative
claim based on race.   Summary judgment on Count Two is therefore
granted in favor of the Defendants.


The Facts Do Not Support a Claim for Retaliation


     The fourth cause of action alleged in Sanchez Day's
complaint is one for retaliation, in violation of 42 U.S.C. §
2000e-3(a).   (See Complaint ¶¶ 74-78.)  As with her civil rights
claims, Sanchez Day's retaliation claim is nonspecific in its
allegations, simply stating that she complained to her employer
about discrimination, after which her superiors "engaged in or
condone [sic] retaliatory behavior against Plaintiff."   (Id. ¶
77.)  The only specific event mentioned in connection with
retaliation is the Plaintiff's alleged termination.   (See id. ¶
78.)

     As an initial note, neither the performance evaluation that
gave Sanchez Day a "conditional" review for 2008, nor the
decision to deny her request for a promotion, can form the basis
for a retaliation claim, since both occurred before she engaged
in any protected action.   See McAllister v. Queens Borough Pub.
Library, 309 F. App'x 457, 459 (2d Cir. 2009).   Although the
parties dispute the precise date on which Sanchez Day first

                              19

brought her discrimination complaints to DCA's equal employment
opportunity department, both sides agree that it took place
sometime in May of 2009.  (See Pl.'s Rule 56.1 Statement, Dkt.
No. 55-1, ¶ 54; D.'s EEOC Complaint, Dkt. No. 53-12, at 5.)
Both the issuance of Sanchez Day's 2008 performance evaluation
and her application for Kassapian's position took place in April
of that year.  (See Evaluation, Dkt. No. 45-10; Email Exchange,
Dkt. No. 45-11.)

Meanwhile, Sanchez Day's alleged termination cannot form
the basis for a retaliation claim because the evidence before
the Court shows that she resigned voluntarily.  In the voicemail
she left on Cohen's answering machine, Sanchez Day clearly
states that she was "resigning my position at the Department of
Consumer Affairs for medical reasons," that she would not be at
work the next two days, and that she planned on talking with
Cohen to "finalize some of the cases and determine my last day."
(Recording, Dkt. No. 45, Ex. O.)  The Plaintiff disputes the
content of the recording in her Rule 56.1 statement (See Dkt.
No. 55-1, ¶ 91), citing to an affidavit in which she states that
she "did not intend to resign but instead asked [Cohen] to
telephone me to discuss a medical leave of absence."  (Pl. Aff.
in Opp., Dkt. No. 53-1, ¶ 103.)  This assertion is contradicted
by the audio of the message itself; in the recording, Sanchez
Day makes no mention of a leave of absence, and her use of the

term "resigning," as well as the terms "final date" and "last day," clearly evince that she intended to end her employment at DCA, rather than suspend it. Based on the evidence before the Court, there is no genuine dispute that Sanchez Day was not terminated, but rather resigned.

In her briefing, the Plaintiff asserts that she did not resign from DCA because she communicated with Cohen the following day to say that she wished to take leave, rather than to quit. She buttresses this assertion by attaching two notes from her doctor and a signed form requesting leave, dated a week after she left her resignation voicemail. As an additional note, the Court need not consider this assertion, because it was not included in her Rule 56.1 statement. See McCall, 2015 WL 5730352 at *13. Even if the argument were to be considered, post-hoc evidence that the Plaintiff later wished to return to her position does little to undermine the proposition that her earlier, clearly-stated resignation was genuine. Cf. Trinidad v. N.Y. City Dep't of Corr., 423 F. Supp. 2d 151, 158 (S.D.N.Y. 2006) (rejecting claims brought by plaintiff who resigned, but decided that she had made a mistake and applied for reinstatement less than a month later).

A voluntary resignation can still constitute an adverse employment action if a plaintiff was constructively discharged, which occurs "when an employer, rather than directly discharging

21

an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." Cadet v. Deutsche Bank Sec. Inc., No. 11 Civ. 7964, 2013 WL 3090690, at *11 (S.D.N.Y. June 18, 2013) (quoting Trinidad, 423 F. Supp. 2d at 168 (S.D.N.Y. 2006)). Working conditions are intolerable "if they are so difficult that a reasonable person in the employee's shoes would have felt compelled to resign." Id. However, the existence of a hostile work environment is a "necessary predicate" to a constructive discharge case. Id. (quoting Penn. State Police v. Suders, 542 U.S. 129, 149 (2004)). Because summary judgment has been granted against the Plaintiff on her hostile work environment claim, any allegation of a constructive discharge must fail as well. Sanchez Day's voluntary resignation is therefore fatal to her retaliation claim, and summary judgment is granted for the Defendants on Count Four.

The Plaintiff's Negligence Cause of Action is Dismissed for Failure to File a Notice of Claim

Sanchez Day's fifth cause of action, alleging negligent hiring and supervision on the part of the Defendants, cannot stand because she did not file a notice of claim with the City, as required by New York General Municipal Law § 50-e. State

22

notice of claim statutes apply to state law claims even when those claims are brought in federal court.  Hardy v. N.Y. City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999).  In New York, filing a notice of claim is required to bring an action against either a municipality or its individual employees, and failure to file ordinarily requires dismissal.  DiRuzza v. Village of Mamaroneck, No. 14 Civ. 1776, 2014 WL 6670101, at *2 (S.D.N.Y. Oct. 6, 2014).  Because Sanchez Day did not file the required notice before bringing this lawsuit, her state-law claim for negligence cannot be sustained.

**Conclusion**

The Defendants' motion for summary judgment is granted as to each of the five counts in the Plaintiff's Complaint, as set forth above.  The Complaint is dismissed with prejudice.

It is so ordered.

New York, NY
March 15, 2016

ROBERT W. SWEET
U.S.D.J.